UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Probir K. Bondyopadhyay, et al. § | | |
| v. § | | 4:20-cv-1340 |
| Bank of New York Mellon, as trustee § | | Chief Judge Rosenthal[1] |
| | | |
| Probir K. Bondyopadhyay, et al. § | | |
| v. § | | 4:20-cv-1359 |
| Shellpoint Mortg. Servicing § | | Judge Hughes |

**SHELLPOINT'S MOTION TO DESIGNATE PLAINTIFFS VEXATIOUS LITIGANTS**

Since 2003, plaintiffs filed nine frivolous suits in Harris County contesting the enforcement of liens on this property, including six since 2017.[2] In every case prior to the two live actions, the courts rendered judgment for defendants or dismissed for want of prosecution. In the first of the latest two suits, the Bondyopadhyays sued the investor in their home loan, The Bank of New York Mellon, as trustee (**BoNYM**), in September 2019 (the **2019 suit**, No. 4:20-cv-1340). They then sued the loan servicer, NewRez LLC d/b/a Shellpoint Mortgage Servicing, last month (the **2020 suit**, No. 4:20-cv-1359). The allegations are substantially identical. Both suits are frivolous and filed only to delay foreclosure. The Bondypadhyays' repeated relitigation of issues already determined against them warrants their designation as vexatious litigants.

---

[1] Defendants requested a premotion conference with Chief Judge Rosenthal regarding consolidating the matters per the judge's rules. Ct. Ps. 4. Per Southern District local rules, cause 4:20-1340 is the case in which to raise the issue because that lawsuit was the first filed. R. 7.6(B). Shellpoint will file a courtesy copy of the consolidation motion in this court if Chief Judge Rosenthal permits the filing. *Id.*
[2] Harris Cty. Dist. Ct. Nos. 2003-37746, 2014-56962, 2015-67497, 2017-01064, 2017-01064A, 2018-03883, 2018-88693, 2019-01192, 2019-68895 & 2020-17640.

## ARGUMENT & AUTHORITIES

**A. The legal standard for vexatious designation under Texas statutes and its consequences.**

On or before the ninetieth day after a defendant answers or makes a special appearance, it may move for an order determining plaintiff is a vexatious litigant and requiring plaintiff furnish security. TEX. CIV. PRAC. & REM. CODE § 11.051. The court may also prohibit plaintiff from filing new litigation pro se without first obtaining permission from the local administrative judge for the county in which the proposed suit is to be filed. §§ 11.101-102. Filing this motion automatically stays litigation pending the disposition of the motion. § 11.052. The court may consider evidence in making its finding. § 11.053(b).

The court may find a plaintiff is a vexatious litigant if defendant shows (**1**) "there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant" and (**2**) either (**a**) in the prior seven years plaintiff commenced, prosecuted, or maintained as a pro se litigant at least five suits finally determined adversely to plaintiff, or (**b**) after a litigation has been finally determined against plaintiff, plaintiff repeatedly relitigates or attempts to relitigate, pro se, the validity of the determination or the cause of action, claim, controversy or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined. § 11.054(1), (2).

If the court determines plaintiff is a vexatious litigant, it shall order plaintiff to furnish security for defendant's benefit. § 11.055(a). The amount of the security to be furnished is to assure payment to defendant of its reasonable expenses incurred in or in connection with the litigation, including costs and attorney's fees. § 11.055(c). If plaintiff does not furnish the security within the time limit imposed by the court, the court shall dismiss the litigation as to movant. § 11.056. If plaintiff does furnish the security, movant is required to answer within ten days. § 11.052. If the litigation is dismissed on the merits, movant has recourse to the security. § 11.057.

**B. This court has inherent authority for designation of vexatiousness and dismissal.**

Courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *Obama v. United States*, No. 3:09-CV-2260, 2010 WL 668847, at *2 (N.D. Tex. Feb. 24, 2010). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* Sanctions may be appropriate when a pro se litigant has a history of submitting multiple frivolous claims. *Obama*, 2010 WL 668847, at *2. Pro se litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Upon a finding of bad faith or abuse of the judicial process, federal courts have the inherent, discretionary authority to dismiss an action. *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995).

**C. The Bondyopadhyays' history of frivolous litigation regarding this property.**

The Bondyopadhyays sued Countrywide Home Loans in 2003. (No. 2003-37746.[3]) The court dismissed for want of prosecution on December 12, 2003.

The Bondyopadhyays sued Bank of America, Bayview Loan Servicing, LLC and BoNYM in 2014. (No. 2014-56962.) They made the same allegations in that suit as the present suit including "Bank of America Home Loan[] has admitted . . . to the Paul Volcker Commission . . . fraud . . . aris[ing] out of the destruction of the Countrywide Home loan" and "this loan was part of a class action." (Ex. 1, pet. at 1-2; *see also id.* at 19.) The Bondyopadhyays alleged Bank of America "pleaded guilty . . . to 'Foreclosure Fraud' on this account . . . and the contract . . . was broken." (*Id.* at 2; *see also id.* at 10.) They continued, "Plaintiffs have paid the principal amount of the loan in full BY FORCE of five consecutive Chapter-13 bankruptcy processes." (*Id.* at 2;

---

[3] All case numbers are for the district courts of Harris County unless otherwise noted.

*see also id.* at 7, 11, 16.) They asserted BoNYM "was created by a fraudulent affidavit in 2011." (*Id.* at 3; *see also id.* at 8.) They repeatedly make the ambiguous assertion regarding the loan being in "continuous foreclosure." (*Id.* at 2, 6, 12.) And they assert conclusorily, "Mr. Anthony Scott Vincent, a Texas lawyer is an integral part of the Loan Servicer Fraud." (*Id.* at 8.) Despite hyperbolous references to "evil business" (*id.* at 2) and "evil schemes and designs" (*id.* at 9) the Bondyopadhyays never allege any plausible facts suggesting any wrongdoing. Defendants obtained summary judgment on March 29, 2016 (ex. 3, orders; *see also* ex. 2, summ. j. mots.). This is the first suit finally determined against the Bondyopadhyays in the seven preceding years.

The Bondyopadhyays sued foreclosure counsel and one of its attorneys on November 11, 2015—before the prior suit was even concluded—with fundamentally the same complaints. (No. 2015-67497.) The same vague references to the Volcker Commission (ex. 4, pet. at 2, 6, 10), a "fraudulent affidavit," (*id.* at 3), "continuous foreclosure" (*id.* at 3, 5-6), paying the "loan BY FORCE through Chapter 13" (*id.* at 5) and to Mr. Vincent (*id.* at 9). Defendants prevailed on summary judgment on December 5, 2016 (ex. 6, order; ex. 5, summ. j. mot.). This is the second suit finally determined against the Bondyopadhyays in the seven preceding years.

The Bondyopadhyays sued Bayview and foreclosure counsel on January 6, 2016 again with the same allegations: the Volcker Commission (ex. 7, pet. at 2, 4, 8), Mr. Vincent (*id.* at 2, 7), their payment "BY FORCE through Chapter 13" (*id.* at 4), "evil designs" (*id.* at 5), and an alleged "continuous foreclosure status" (*id.* at 4-5). The court granted Bayview summary judgment on November 7, 2017 (No. 2017-01064A, ex. 9, order; *see also* ex. 8, summ. j. mot.) after severing the suits as to each defendant. The court granted counsel summary judgment on May 20, 2019. (No. 2017-01064, ex. 11, order; *see also* ex. 10, summ. j. mot.) Conservatively counting the

severed suits as one case, this is the third suit finally determined against the Bondyopadhyays in the seven preceding years.

The Bondyopadhyays sued their HOA on January 18, 2018. (No. 2018-03883.) The HOA prevailed on summary judgment November 19, 2018. (Ex. 12, order on summ. j.) This is the fourth suit finally determined against the Bondyopadhyays in the seven preceding years.

The Bondyopadhyays sued BoNYM again on December 14, 2018 while their latest suit against foreclosure counsel was still active. (No. 2018-88693.) They parroted the same claims. (*See generally*, ex. 13, pet.) Again, they alleged "foreclosure fraud arising out of the destruction of Countrywide Home loan in 2008," (*id.* at 1; *see also id.* at 3, 7) and referenced the Volcker Commission (*id.* at 7), again they contended they "paid . . . in full . . . by force of the Chapter 13 Bankruptcy" (*id.* at 4) despite being "on CONTINUOUS foreclosure status" (*id.* at 5-6, 8, 10). BoNYM obtained summary judgment April 29, 2019. (Ex. 15, order; *see also* ex. 14, summ. j. mot.) This is the fifth suit finally determined against them in the seven preceding years.

The Bondyopadhyays sued foreclosure counsel again on January 7, 2019, again while their prior suit was still active, and again reciting the same claims. (No. 2019-01192, ex. 16, pet.) The suit once again was framed in "[t]he nature of . . . foreclosure fraud arising out of the destruction of Countrywide Home loan in 2008," (*id.* at 1; *see also id.* at 3, 14), again they contended they "paid . . . in full . . . by force of the Chapter 13 Bankruptcy" (*id.* 3) despite being kept in "continuous foreclosure status," (*id.* at 5, 6, 14). Foreclosure counsel prevailed again on their dismissal motion on April 22, 2019. (Ex. 18, order; *see also* ex. 17, summ. j. mot.) This is the sixth suit finally determined against the Bondyopadhyays in the seven preceding years.

**D. The Bondyopadhyays' current suits echo the allegations of their prior suits.**

Both of the new suits are regurgitations of prior claims. In the 2019 suit, they again assert a "complaint . . . arising out of the destruction of Countrywide Home." (ECF No. 1-2 at 2, 5.) The same is alleged in the 2020 suit. (ECF No. 1-2 at 2.) In the 2019 suit, they again attack Mr. Vincent's ambiguous "fraud" (ECF No. 1-2 at 3, 6-7); they plead the same in the 2020 suit (ECF No. 1-2 at 4, 6). They again reference their contention the loan was in "continuous foreclosure" in the 2019 suit. (ECF No. 1-2 at 3, 8.) They echo the claim in the 2020 suit. (ECF No. 1-2 at 5.)

**E. There is no reasonable probability the Bondyopadhyays will prevail.**

The Bondyopadhyays' latest attempts to relitigate the issues already determined several times against them will not prevail because they are barred by res judicata and fail to plead a claim.

**1. Res judicata bars the Bondyopadhyays' claims.**

A federal court determines the preclusiveness of state court judgments under the res judicata principles of the state from which the judgment originates. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). In Texas, res judicata or claims preclusion, prevents a party from re-litigating a claim finally adjudicated as well as matters that, within the use of diligence, the party could have litigated in the prior suit. *Id*. (citing *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). Res judicata bars a suit if the movant proves: (**1**) a prior final judgment on the merits by a court of competent jurisdiction, (**2**) identity of the parties or those in privity with them, and (**3**) a second action basing on the same claims raised or should have been raised in the first action. *Id*. (citing *Tex. Water Rights Comm'n v. Crow Iron Work*, 582 S.W.2d 768, 771-72 (Tex. 1979)).

### a) The judgments in several prior suits were final judgments on the merits.

The prior suits including those bearing cause numbers 2014-56962, 2015-67497, 2017-01064, 2017-01064A, 2018-03883, 2019-01192 (the **servicing suits**) resulted in final judgments on the merits. (*See* exs. 3, 7, 10, 12, 15 & 18.)

### b) The same parties, or those in privity, are involved.

The servicing suits all involve the investor, BoNYM, or its servicers and foreclosure counsel. "Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Nat'l Am. Ins. Co. v. Breaux*, 368 F. Supp. 2d 604, 621 (E.D. Tex. 2005). Loan servicers are in privity with BoNYM because they service the loan for the investor. Foreclosure counsel are engaged by the loan servicer to enforce the lien. All of these parties are in privity and therefore for purposes of res judicata are effectively the same parties.

### c) The Bondyopadhyays raised or could have raised the same claims before.

All of the themes of the Bondyopadhyays' many prior suits are repeated mechanically in both of their live lawsuits. While the nature of their allegations are elusive, whatever it is they claim has plainly been asserted before in their servicing suits.

### 2. The Bondyopadhyays' claims fail on the merits.

Even if this were the first time the Bondyopadhyays were asserting their allegations, the claims would be subject to dismissal because they failed to plead any viable claim. The only cause of action they clearly reference is fraud. Its elements include a false, material representation made either with knowledge of its falsity or with reckless ignorance as to its falsity, intending the plaintiff to act on the representation as well as the plaintiff's reliance and injury. *See, e.g.*, *JPMorgan Chase Bank v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). At a

minimum, the Bondyopadhyays fail to assert how they relied on information about the identity of the investor or servicer or how they were injured by continuing to fail to make their payments.

To the extent the federal rules of pleading apply, the Fifth Circuit applies Rule 9(b) to fraud complaints "with 'bite' and 'without apology.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). "Pleading fraud with particularity in this circuit requires time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams*, 112 F.3d at 177 (internal quotation marks omitted). "Although Rule 9(b) expressly allows scienter to be averred generally, simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (internal quotation marks omitted). "The plaintiffs must set forth *specific facts* supporting an inference of fraud." *Id*. (internal quotation marks omitted, emphasis in the original). To establish fraud against a corporation, "the required state of mind must actually exist in the individual making (or being a cause of the making of) the misrepresentation, and may not simply be imputed to that individual on general principles of agency." *Dynegy, Inc. v. Yates*, 345 S.W.3d 516, 530 (Tex. App.—San Antonio 2011), *rev'd on other grounds*, 422 S.W.3d 638 (Tex. 2014). Subjective intent or knowledge of several actors cannot be combined, "mixing and matching" to satisfy the scienter requirement of fraud. *Id.* "[T]he same corporate agent must commit all the elements of fraud before the corporation may be held liable for the fraud." *Id.* at 531. Rule 9(b) "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, . . . and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

The basis for fraud the Bondyopadhyays assert appears to be that the loan transferred to BoNYM's ownership and in the course of time it came to be serviced by a series of loan servicers. That is nothing but the ordinary course of business in residential loan servicing. As recently as October 2, 2019, the Harris County district courts reaffirmed BoNYM "is the holder of the Note and Deed of Trust and holds a valid security interest in the real property" at issue in this lawsuit. (Ex. 19, final j. at 1.) None of the exhibits the Bondyopadhyays attach to their petitions are anything but consistent with BoNYM's ownership of the loan and servicing through a series of loan servicers up to the current servicer, Shellpoint.

**F.  The Bondyopadhyays are vexatious litigants and must provide security or be dismissed.**

The Bondyopadhyays' suit has no reasonable probability of success, and they fail both of the second disjunctive elements under the Texas statute because they have filed at least five suits that were finally determined against them in the preceding seven years and they have repeatedly tried to relitigate issues pro se which were finally determined against them.  Given their abusive tactics, dismissal is warranted for their willful abuse of the courts to harass their creditors and avoid the consequences of their defaults.  In the alternative, plaintiffs should be required to post a security of $30,000 to assure payment to defendants of their reasonable expenses incurred in or in connection with the litigation, such as carrying costs for the property for months in which the Bondyopadhyays continue to occupy it and including costs and attorney's fees.

## PRAYER

Shellpoint moves the court to order (**1**) the Bondyopadhyays are vexatious litigants, (**2**) as a precondition to filing any pro se litigation in the future, they must obtain permission from the local administrative judge for the filing county, and (**3**) either (**a**) their claims are dismissed with prejudice, or (**b**) they are to furnish security in the amount of $30,000.00 within thirty days or their claims are dismissed with prejudice, and (**4**) for other relief it is entitled to in law or in equity.

Date: April 24, 2020                  Respectfully submitted,

    *s/ Walter McInnis*
C. Charles Townsend, SBN: 24028053
Walter McInnis, SBN: 24046394
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339
walter.mcinnis@akerman.com
charles.townsend@akerman.com

Monica Summers, SBN: 24083594
AKERMAN LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
Telephone: 210.582.0220
Facsimile: 210.582.0231
monica.summers@akerman.com

**ATTORNEYS FOR SHELLPOINT**

**CERTIFICATE OF CONFERENCE**

      I certify that on April 16, 2020, I conferred with plaintiffs via email regarding the consolidation of these lawsuits. Their only response as of the date of this filing was to email two documents they filed in the state court on August 18—3 days after removal of the 2019 suit and 2 days after removal of the 2020 suit reflecting their "very strong objection to defendant's motion to move this case elsewhere."

    *s/ Walter McInnis*
    Walter McInnis

**CERTIFICATE OF SERVICE**

      I caused this document to be served on April 24, 2020 as follows:

**VIA U.S. MAIL & CERTIFIED MAIL RECEIPT**
**NO. 9414 7266 9904 2166 2147 77**
Probir K. Bondyopadhyay & Madhuri Bondyopadhyay
14418 Oak Chase Drive, Houston, Texas 77062
*Pro se plaintiffs*

    *s/ Walter McInnis*
    Walter McInnis